UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES P. FARLEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 06-221-P-H |
| | ) | |
| MICHAEL P. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions whether the residual functional capacity assigned by the administrative law judge is supported by substantial evidence, whether the administrative law judge was required to contact the plaintiff's treating physician and whether the administrative law judge properly addressed the plaintiff's claim of depression, dysthymia and pain. I recommend that the court vacate the commissioner's decision and remand the case for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from the severe impairments of venous insufficiency, varicose veins and carpal tunnel syndrome, with a history of substance abuse,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on
(*continued on next page*)

Finding 3, Record at 13; that none of these impairments or any combination of them met or medically equaled the requirements of any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings"), Finding 4, *id*. at 14; that the plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand, walk and sit up to 6 hours in an 8-hour work day while changing positions hourly and avoiding constant hand use, Finding 5, *id*.; that he was unable to perform his past relevant work, Finding 6, *id*. at 16; that given his age (a younger individual), education (high school), work experience and residual functional capacity, use of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff was able to perform, Findings 7-8 & 10, *id*. at 16-17; and that the plaintiff had not been under a disability as that term is defined in the Social Security Act from July 15, 2003 through the date of the decision, Finding 11, *id*. at 17.  The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

   The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1381(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

   The administrative law judge reached Step 5 of the sequential review process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his

---

October 5, 2007 pursuant to Local Rule 16.3(a)(a)(C), requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 136, 147 n.5 (1987); *Goodermote*, 647 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff first attacks the administrative law judge's conclusions regarding his residual functional capacity.  Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 11) at 2-3.  He contends that there was no evidentiary support for the administrative law judge's determination that his impairments caused a limitation in the use of his hands only at the level of avoiding constant hand use and rejecting the state-agency reviewers' limitation on pushing and pulling.  He points out that his treating physician assigned limitations on his physical functions that would render him unable to work, as did the state-agency consulting examining physician.  Record at 309-12 (treating physician), 263 (consulting examiner).  The administrative law judge found that the plaintiff had a residual functional capacity for light work.  *Id*. at 14, 17.  The plaintiff asserts that "[t]he ALJ had no valid medical basis for his refusal to defer to the treating physician[.]"  Itemized Statement at 2.  However, the administrative law judge was not obligated to defer to the opinion of a treating physician that the plaintiff was disabled, as that issue is reserved to the commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).[2]  With respect to the treating physician's entries on the Physical Residual Functional Capacity Questionnaire regarding the plaintiff's abilities to perform repetitive fingering, reaching and handling, it is clear that these entries are based on "patient's responses to question" with

---

citations to relevant statutes, regulations, case authority and page references to the administrative record.

[2] The plaintiff's suggestion, Itemized Statement at 5, that the commissioner's decision must be reversed and the case remanded because the administrative law judge's opinion does not mention the consulting examiner's report is incorrect.  That error, *see* Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007) at 122, is harmless, because an opinion on an issue reserved to the commissioner which was based primarily on the report of the claimant would have been (*continued on next page*)

3

which the physician "agree[d] to [his] best knowledge," Record at 309, 312. As the administrative law judge correctly noted, these limitations were "not supported by any clinical notes in this record, or by any objective testing." *Id.* at 16. One or the other is necessary. 20 C.F.R. §§ 404.1529(a), 416.929(a). Similarly, the consulting examining physician's statement that the plaintiff "does not appear to be able to do any type of work in his current situation," Record at 263, is based primarily on what the plaintiff told the examiner rather than testing or examination and the only results of that examination that might indicate some physical limitations deal with the plaintiff's feet, not with his hands, *id*. at 262.

The plaintiff argues that, because the administrative law judge stated that the treating physician's opinions were not supported by clinical notes or objective testing, "the basis for her opinions . . . could not have been clear to him" and he was accordingly required to "recontact the doctor before rejecting her opinion[,]" citing Social Security Ruling 96-5p. Itemized Statement at 4. However, the plaintiff's premise is faulty. The correct observation that the physician's opinions as to residual functional capacity were not supported by clinical notes or objective testing does not necessarily mean that the administrative law judge could not have discerned the basis for those opinions. In this case, it is quite clear that those opinions rest on the report of the plaintiff himself to the physician, Record at 309, and that is simply not enough under applicable regulations, *see, e.g.*, 20 C.F.R. §§ 404.1512(c), 404.1513(b)(6), 416.912(c), 416.913(b)(6). Nothing in Social Security Ruling 96-5p requires the administrative law judge to contact the treating physician under these circumstances.

The plaintiff contends that, because the administrative law judge did not contact his treating physician, he was required to "complete the analysis required by 20 C.F.R. § 404.1527(d)" and his

---

disregarded by the administrative law judge in any event.

4

failure to do so requires remand. Itemized Statement at 4. The administrative law judge found the treating physician's opinion with respect to the plaintiff's residual functional capacity to be unsupportable, one of the factors listed in that section of the regulations. 20 C.F.R. § 404.1527(d)(3). Requiring the administrative law judge to discuss the other factors would be an empty exercise once he had determined that he need give no weight to that opinion.

The plaintiff also finds fault with the administrative law judge's "dismiss[al]" of the "conclusion" of Dr. Boothby, the consulting examining physician, "that [the plaintiff] is unable to work." Itemized Statement at 5. It is difficult to discern the basis for Dr. Boothby's statement that "[the plaintiff] does not appear to be able to do any type of work in his current situation," Record at 263, other than the plaintiff's report to him of a diagnosis of severe peripheral neuropathy, *id*. at 262, which Dr. Boothby appears to question, *id*. at 263. It would certainly have been better practice for the administrative law judge, having summarized Dr. Boothby's findings, *id*. at 15, to have discussed Dr. Boothby's statement, even though that issue is reserved to the commissioner. Standing alone, however, this omission is not sufficient to require remand, both because Dr. Boothby appears to qualify the statement immediately after making it and because his report provides little or no basis for it other than the plaintiff's own report.

There is one entry in the treating physician's reports that is not based on the plaintiff's own reports. In a document entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," the physician reports that the plaintiff is limited to frequent fingering due to "decreased sensation in hands on exam." Record at 315. The administrative law judge included in the residual functional capacity that he assigned to the plaintiff the condition that "he should avoid constant hand use." *Id*. at 14. The administrative law judge did not indicate any basis in the record for this limitation. I have been unable to locate authority on the question whether "avoid[ing] constant hand

5

use" necessarily includes "frequent but not constant fingering," but it appears reasonable so to conclude. If one is not using one's hands constantly, but only frequently, as the administrative law judge made clear in his hypothetical questions to the vocational expert who testified at the hearing, *id.* at 352-56, one could not be engaging in fine manipulation, the definition of fingering for purposes of Social Security claims, *id*. at 315, more than frequently. Thus, the administrative law judge's failure to note explicitly this limitation imposed by the treating physician can only be described as harmless error.

More troubling is the administrative law judge's failure, with one exception, to mention the residual functional capacity analyses of two state-agency reviewing physicians that are in the record, as the plaintiff points out. Itemized Statement at 6-7. The exception is the following:

> As to the physical evaluation by DDS reflected in 8F, the undersigned believes the agency was somewhat generous to the claimant in its assessment of the limitations on the use of his hands. If, in fact, the claimant has been bothered by his carpal tunnel syndrome as severely, and as long, as he alleges, one would expect that he would have long since had surgery to address the problem.

Record at 16. The administrative law judge did not mention Exhibit 11F, which is another evaluation by a DDS physician reviewer. The evaluation in Exhibit 8F, by L. Johnson, M.D., includes the proviso: "Avoid constant handling on [left] and frequent on [right]." *Id*. at 267. Presumably, this is based on Dr. Johnson's noted dated August 4, 1998, under the heading "Neuropathy in arms and legs/BCTS" as follows: "EMG: evidence of bilateral median neuropathies at the wrist. The right is of moderate severity and the left of mild severity." *Id*. at 271. This is apparently the limitation which the administrative law judge found to be "somewhat generous." However, he cited nothing in the medical records to support this partial rejection of the physician reviewer's evaluation.[3] Exhibit 11F, an

---

[3] Furthermore, were there no medical evidence in the record to support the administrative law judge's rejection of a greater restriction on the plaintiff's use of his right hand in work-related activities than that which he adopted, the only reason given by the administrative
(*continued on next page*)

6

evaluation prepared by Robert Hayes, M.D., imposes limits on both handling and fingering as follows: "No constant finger/handle bilat. Electrically positive CTS without clinical symptomology." *Id*. at 302. This does constitute substantial evidence to support the limitation adopted by the administrative law judge. Of course, it would have been better practice for the administrative law judge to point to this evidence specifically in his opinion, but that oversight cannot prevent the court from determining that substantial evidence does exist in the record to support the agency's conclusion.

The plaintiff also points out that both state-agency reviewers stated that his ability to push and/or pull (including the operation of hand controls) was "limited," but no such limitation appears in the administrative law judge's decision. Itemized Statement at 3.[4] Dr. Johnson did not comply with the directive on the form he filled out to "[e]xplain how and why the evidence supports your conclusions" in this regard, noting only "see pg 8," where a summary of the medical evidence appears. Record at 265. Perhaps the same evidence that supports the handling limitations which Dr. Johnson imposed would also support some unspecified limits on pushing and pulling, but that is not clear from the record and cannot be inferred in the absence of some degree of medical expertise. In Dr. Hayes's evaluation, he provides more of a response when asked for an explanation, to wit: "Claimant also has CTS bilat electrically, but most recent exam describes no thenar atrophy and intact motor strength." *Id*. at 300. This must be addressed to the imposed limitation on pushing and pulling in the upper extremities, although neither the nature nor degree is specified, as none of the other entries on this page of the form deal with the upper extremities. The difficulties imposed by these documents are obviated, however, by the fact that it is not possible to tell whether the three jobs specified by the administrative

---

law judge for that rejection would appear to be precisely the type of medical judgment which administrative law judges are forbidden to make. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

[4] In the treating physician's report, the box for "yes" is checked after the question "Is PUSHING and/or PULLING affected by the impairment?" but no further information is provided, despite the form's request for nature and degree of such effect for each of upper extremities and lower extremities. Record at 314.

7

law judge as available for the plaintiff require any particular amount of pushing and pulling. The Dictionary of Occupational Titles does not include pushing or pulling as a separate descriptive category for its job listings. None of the descriptions of the three jobs involved — cashier II (DOT No. 211.462-010), gate guard (DOT No. 372.667-030) and automobile self-serve service station attendant (DOT No. 915.477-010) — lists any job duties that appear to involve either pushing or pulling of arm controls or constant pushing and/or pulling of materials, the alternative requirements for a strength rating of light work, which all three of these jobs carry.[5]

The plaintiff next argues that the administrative law judge may not rely on the evaluations performed by Drs. Johnson and Hayes because the treating physician's report was not available to them. Itemized Statement at 7-8. The problem here for the plaintiff is that he finds fault with the administrative law judge's conclusions as to the limitations on pushing and pulling, use of his hands, appropriate exertional level and sitting, walking and standing limitations, *id*. at 2, but all of his treating physician's conclusions on each of these limitations is based only on the plaintiff's "responses to question[s]." Record at 309-12.[6] That is not medical evidence based on examination or medical testing and accordingly could be disregarded by the state-agency physician reviewers. Indeed, both state-agency reviewers rejected Dr. Boothby's conclusions with respect to limitations, as follows: "Dr. Boothby's limitations far outweigh a nearly [normal] exam[,]" *id*. at 270; "Consultant Dr. Boothby opines few work opportunities in the face of near normal exam and no established [diagnosis]/etiology by [history,]" *id*. at 305.

---

[5] I do not reach the plaintiff's argument that the administrative law judge could not consider the gate guard and gas station attendant jobs to be available to him because they are semi-skilled and the administrative law judge found it unnecessary to determine whether the plaintiff had any transferable skills — in essence, an argument that a job classified by the Dictionary of Occupational Titles as semi-skilled requires that a claimant have applicable transferable skills before it may be considered "available" for him — because the cashier II position is unskilled. I have previously indicated that one available job may be sufficient as a basis for a finding that a claimant is not disabled. *See, e.g., Carle v. Barnhart*, 2005 WL 3263938 (D. Me. Nov. 30, 2005) at *2.

[6] The only exception, the limitation which the treating physician indicated was based on "decreased sensation in hands on exam," Record at 315, is not inconsistent with the state-agency reviewers' limitations directing that the plaintiff "[a]void constant handling on (*continued on next page*)

Finally, the plaintiff attacks the failure of the administrative law judge to include in his conclusions regarding residual functional capacity or in his discussion of the issue any reference to the effects of depression, dysthymia[7] or pain, if any, on the plaintiff's residual functional capacity. Itemized Statement at 8-9. The opinion mentions dysthymia, Record at 13-14, and pain, *id*. at 14-15, as well as the plaintiff's credibility in testifying about his pain, *id*. at 16. The opinion does not mention depression. Counsel for the plaintiff confirmed at oral argument that the record in this case treats depression and dysthymia as a single impairment. I will treat dysthymia as the diagnosed impairment. Having found that the plaintiff suffered from three severe impairments, the administrative law judge was required to "consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e).

Here, the administrative law judge appeared to rely, Record at 13-14, on a consultative psychological evaluation performed by James M. Moran, *id*. at 252-55. The administrative law judge states that the examiner's conclusion was that the plaintiff "had no psychological impairment in his ability to function in a variety of work settings," *id*. at 13-14, and that, based on this report, the plaintiff's testimony and a review of the entire record, the dysthymia "results in no more than mild limitations on the [plaintiff's] activities of daily living, his social functioning, or his concentration, persistence and pace[,]" *id*. at 14. The administrative law judge correctly reported the psychologist's findings, *id*. at 255, and committed no error in relying on them to conclude that no limitations on any

---

[left] and frequent on [right]," *id*. at 267, or have "[n]o constant finger/handle bilat[,]" *id*. at 302.

[7] Dysthymia is "a mood disorder characterized by a depressed feeling and loss of interest or pleasure in one's usual activities that persists for more than two years but is not severe enough to meet the criteria for major depression." *Kisling v. Chater*, 105 F.3d 1255, 1256 n.2 (8th Cir. 1997) (citing Richard Sloane, *The Sloane-Dorland Annotated Medical-Legal Dictionary* (1992 Supp.) at 204).

9

work functions arising out of dysthymia needed to be included in the analysis of the plaintiff's residual functional capacity.[8]

With respect to the plaintiff's complaints of pain, the plaintiff argues only, in somewhat conclusory fashion, that the administrative law judge failed to "ma[k]e the pain analysis required in this circuit by *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 21 (1st Cir. 1986); *McDonald v. Heckler*, 588 F.Supp. 1400 (D. Me. 1984), SSR 96-3p[9] and 20 C.F.R. § 404.1529." Itemized Statement at 9. The plaintiff has presented this issue sufficiently for the court to consider it, although barely. The administrative law judge's discussion of pain is sketchy at best. He discusses the plaintiff's complaints of pain briefly, Record at 14-15, notes an occasion on which the plaintiff reported that he was "able to walk without pain," *id*. at 15, and discounts the plaintiff's credibility with respect to the intensity, duration and limiting effects of his impairments because (i) if the plaintiff in fact had been bothered by his carpal tunnel syndrome to the extent he suggested, he would have had surgery to address the problem,[10] (ii) the objective testing does not fully support "some of the allegations," and (iii) the plaintiff's "spotty work history suggests that [he] may lack a strong

---

[8] The plaintiff asserts that "[g]iven that the only RFC in this record that the ALJ could possibly be relying on specifically cites [the plaintiff's] depression as a factor that may increase his perception of his pain, the ALJ was obligated to expressly consider it and resolve how and to what extent it impacted on [the plaintiff's] RFC[.]" Itemized Statement at 8. This incorrectly characterizes Dr. Hayes's statement, which in fact was "[d]epression may worsen the perception of disability," Record at 304, a very different assertion. It bears noting that an administrative law judge may find support for his conclusions in more than one medical evaluation or report. He is not required to "adopt" a single residual functional capacity assessment on an all-or-nothing basis; he may choose the elements of such an assessment from many sources, which may differ among themselves as to some of those elements. Counsel for the plaintiff strongly disagreed with this conclusion at oral argument, although he was unable to cite any authority in support of his position. Applicable case law is inconsistent with counsel's position. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks — the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case — is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians.")

[9] Social Security Ruling 96-3p deals with the evaluation of pain at Step 2 of the sequential evaluation process. Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007) at 116-18. The discussion of pain in this case concerns Step 4, where the residual functional capacity is determined. The regulations cited by the plaintiff are discussed in this context in Social Security Ruling 96-7p.

[10] The plaintiff did provide an explanation for the fact that carpal tunnel surgery had not yet been performed. Record at 346.

motivation to find and maintain employment[,]" *id*. at 16. The administrative law judge does discuss the plaintiff's activities of daily living, *id*. at 15-16, and the negative results of tests, *id*. at 14-15, but not the evidence of pain killing medication taken by the plaintiff for many years or the other factors listed in 20 C.F.R. §§ 404.1529(c)(3), 416l.929(c)(3). This case presents a close question on the issue of the analysis of subjective pain, but I conclude that the treatment of the issue by the administrative law judge is insufficient. *See generally* Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007), at 133-42. The plaintiff testified about his pain, Record at 342, and his complaints of pain appear to have been consistent in the medical records over a long period of time. Under these circumstances, the administrative law judge was required to devote more effort to consideration of those complaints.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further action consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of October, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge